IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REGINALD EARL BULLOCK,               )
                                     )
                Plaintiff,           )
                                     )
        v.                           )
                                     )        1:15cv183
UNITED STATES OF AMERICA, and        )
DRUG ENFORCEMENT AGENCY (DEA),       )
                                     )
                Defendants.          )
                                     )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Seeking the return of certain property, Reginald Earl Bullock brings this action against the Drug Enforcement Administration ("DEA") and the United States of America (collectively, the "Government") pursuant to Federal Rule of Criminal Procedure 41(g). Before the court is the Government's motion to dismiss, or alternatively, for summary judgment. (Doc. 7.)[1] For the reasons set forth below, the Government's motion will be treated as a motion for summary judgment and will be granted.

## I.    BACKGROUND

The facts of the case, viewed in the light most favorable to Bullock as the nonmoving party, are as follows:

On August 18, 2013, officers with the High Point Police

---

[1] All record citations refer to case No. 1:15cv183, unless otherwise indicated.

Department ("HPPD") conducted a traffic stop of a vehicle driven by Bullock. (Doc. 16-6 at 2.) The officers searched the car, which belonged to one of Bullock's relatives, and discovered a crack pipe and a sawed-off shotgun.[2] (See Doc. 19 in case No. 1:13cr408 at 5, 8-9.)[3] As a result, the officers arrested Bullock. (See Doc. 16-6 at 2.) The officers also seized $6,470 in United States currency ("the Currency"), as well as "[s]everal items of personal property" from the trunk and $196 in "loose change" from the interior console (collectively, "the Other Property"). (Id.; Doc. 2 at 3.)[4]

Upon his release from State custody, Bullock contacted the HPPD regarding the seized property. (Doc. 16-6 at 2.) Police officials told Bullock that the Bureau of Alcohol, Tobacco, and Firearms ("ATF") had possession of his property. (Id.) The ATF, in turn, directed Bullock to the United States Attorney's Office

---

[2] Bullock disclaimed knowledge of the crack pipe, but he admitted possession of the sawed-off shotgun. (Doc. 19 in case No. 1:13cr408 at 8-9.)

[3] The court may take judicial notice of facts obtained from the public record, including the criminal indictment, sentencing transcript, and other filings in United States v. Bullock, No. 1:13cr408, (M.D.N.C.). See Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014).

[4] Bullock's Rule 41(g) petition describes the Other Property as consisting of: $196 in "[l]oose change;" three uncashed payroll checks; nine check stubs from cashed paychecks; three men's suits; one gold and diamond watch; one gold and diamond ring; one gold and diamond bracelet; one gold and diamond chain; two credit cards; a State-issued identification card; a Social Security card, and; a cell phone. (Doc. 2 at 2-3.)

in Greensboro, North Carolina, which redirected him to the DEA office in Virginia. (Id.)[5] Upon contacting the DEA, Bullock "was informed that the DEA was in fact in possession of [his] property, and [he] was instructed to submit the proper paperwork to determine if [his] property would be returned." (Id.)

On August 29, 2013, the DEA adopted the currency for forfeiture. (Doc. 8-1 at 2, 20.) On September 10, 2013, the DEA mailed Bullock a form titled "Personal Notice of Seizure" regarding the impending forfeiture (the "Notice Form"). (Id. at 2-3, 20.) The Notice Form was addressed to Bullock at his residence in High Point, North Carolina (the "Residence") and sent via certified mail, return receipt requested. (Id. at 2-3, 9, 20.) It was delivered on September 27, 2013, and signed for by David M. Thompson, (id.), who gave the Notice Form to Bullock (see Doc. 16-6 at 2-3).[6] Enclosed with the Notice Form was "a Petition for Mitigation of Forfeiture packet" (the "Petition Form"). (Doc. 16-6 at 2.)[7]

The Notice Form informed Bullock about the DEA's forfeiture

---

[5] According to Bullock's Rule 41(g) petition, an ATF officer "adamantly denied any knowledge or whereabouts of [Bullock's] property, and furthermore, [stated that the ATF was] only concerned with firearms and weapons." (Doc. 2 at 3.)

[6] Bullock "readily concedes he received the Notice Form mailed to him on September 10, 2013." (Doc. 11 at 4.)

[7] The Government claims that it only sent the Notice Form to Bullock and denies sending any other forms. (See Doc. 13 at 4.)

proceeding and his corresponding rights. (See Doc. 8-1 at 20.) After identifying the property in question, it stated, "You may petition the DEA for return of the property or your interest in the property (remission or mitigation) and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**" (Id. (emphasis in original).) The Notice Form then contains a section detailing the procedure for requesting remission or mitigation of the forfeiture. (See id.) This section explained, "If you want to request the remission (**pardon**) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (**30**) days of your receipt of this notice." (Id. (emphasis in original).) The Notice Form then contains a separate section entitled "TO CONTEST THE FORFEITURE," which provides:

> In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by **October 15, 2013**. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)).

(Id. (emphasis in original).) Finally, the Notice Form stated that any claim, petition, or other correspondence would be deemed filed "when received by the DEA" at either of two addresses listed

4

on the Notice Form.  (Id.)[8]

On October 15, 2013, Bullock mailed the Notice Form and a completed Petition Form to the DEA at one of the listed addresses. (Doc. 8-1 at 4, 20-22.)  The DEA received Bullock's mailing on October 16, 2013.  (Id. at 4, 22.)  On October 23, 2013, the DEA acknowledged receipt of the Petition through a letter sent by certified mail, return receipt requested, to Bullock at the Residence.  (Id. at 4, 23-25.)  On October 26, 2013, this letter was delivered to the Residence, where an unknown individual signed for it.  (Id. at 4, 25.)[9]  On December 17, 2013, the DEA forfeited the Currency and denied the Petition.  (Id. at 5, 28-33.) Thereafter, the DEA sent, via certified mail, return receipt requested, letters to Bullock at the Residence informing him that his petition had been denied and of his right to request reconsideration of that decision.  (Id.)[10]  Bullock denies receiving any of these DEA mailings.  (Doc. 11 at 5.)

That may be because on October 28, 2013, Bullock was indicted

---

[8] The Government provided two slightly different versions of the Notice Form.  (See Doc. 8-1 at 8, 20.)  The differences between these two forms are not material for the purposes of resolving Bullock's contentions. For the instant analysis, the court utilizes the language of the Notice Form which is more favorable to Bullock.

[9] The delivery signature is illegible.  (See Doc. 8-1 at 25.)

[10] The DEA letters are dated December 17, 2013, and February 20, 2014, but mailing records reflect that the letters were mailed on January 2, 2014, and either February 28, 2014 or March 4, 2014, respectively.  (See Doc. 8-1 at 29, 34-35, 40-42.)

on federal firearm charges, leading to his arrest by federal authorities on November 14, 2013. (Docs. 1, 6 in case No. 1:13cr408.)[11]  On January 9, 2014, Bullock pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (See Doc. 1 in case No. 1:13cr408; Minute Entry Dated Jan. 9, 2014 in case No. 1:13cr408.)  At Bullock's subsequent sentencing hearing, the court and parties discussed the money seized during the traffic stop. (Doc. 19 in case No. 1:13cr408 at 4-7, 15-16, 18-20.)  At the end of this hearing, Bullock requested that the court order the return of his seized money. (Id. at 18.)  After hearing from the Assistant United States Attorney ("AUSA") and defense counsel on the court's authority regarding Bullock's request, the court concluded,

> [I]f there is a separate proceeding, civil forfeiture proceeding or otherwise, with respect to the money, then my order would be that to the extent not otherwise subject to some other collateral proceeding, the money should be returned.
>
> What that essentially means is if there is another proceeding, then you need to pursue that proceeding. I can't collaterally attack that at this time. I would only enter an order that would be subject to whatever the outcome is in that proceeding.

(Id. at 19-20.)  Accordingly, the court ordered, "To the extent not otherwise subject to some other collateral proceeding, the

---

[11] Bullock has been in federal custody since November 14, 2013. (See Doc. 5 in case No. 1:13cr408 (ordering detention pending hearing); Doc. 6 in case No. 1:13cr408 (executed arrest warrant).)

money seized should be returned."  (Doc. 14 in case No. 1:13cr408 at 6.)

Following Bullock's sentencing, the AUSA and defense counsel communicated regarding the seized property.  In October 2014, the AUSA indicated that "three checks that the state was holding . . . were destroyed.  They totaled $5600.  Mr. Bullock may need to request that they reissue them."  (Doc. 11-2 at 5.)  The AUSA also forwarded to defense counsel an email from the HPPD with the subject line "These were the checks."  (Doc. 11-3 at 4.)  That email stated, "Three checks paid to the order of Reginald E. Bullock (1 - $1533.42, 2- $1935.82, 3 - $2010.72) obtained from the blue Otter box found in the trunk of the vehicle."  (See id. at 2.)  Thereafter, in December 2014, the AUSA confirmed in an email to defense counsel that "[i]t is [his] understanding from the case agent that the cash seized from Mr. Bullock was administratively forfeited."  (Id. at 4.)  This action followed.

## II.  ANALYSIS

### A.  Standards Governing the Government's Motion

The Government moves to dismiss Bullock's Rule 41(g) petition or, alternatively, for summary judgment.  (Doc. 7 at 1.)[12]  The

---

[12] Although the Government's motion does not reference Federal Rule of Civil Procedure 12(b)(1) (see Doc. 7), the Government advocates for Rule 12(b)(1) dismissal of the Rule 41(g) petition insofar as it seeks return of the Other Property (see Doc. 8 at 1, 9-10).

Government has submitted affidavits and various exhibits in support of its motion. (See Docs. 8-1, 13-1.) In his response to the motion and in his unauthorized surreply, Bullock likewise submitted materials outside the pleadings. (See Docs. 11-1, 11-2, 11-3, 14-1, 14-2, 14-3, 14-4.)

If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Pursuant to Rule 12(d), courts have discretion to convert a Rule 12(b)(6) motion into one for summary judgment. See Logar v. West Va. Univ. Bd. of Governors, 493 F. App'x 460, 461-62 (4th Cir. 2012);[13] Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998). If the court opts to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." Gay v. Wall, 761 F.2d

---

[13] Unpublished decisions of the Fourth Circuit are not precedential but are cited for the persuasiveness of their reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (internal quotation marks omitted)).

175, 177 (4th Cir. 1985) (ellipsis and internal quotation marks omitted).

As a general matter, parties are on notice of a potential Rule 12(d) conversion if they know that materials outside the pleadings are before the court. Id. Thus, given their provision of outside materials (see Docs. 8-1, 11-1, 11-2, 11-3, 13-1, 14-1, 14-2, 14-3, 14-4), both the Government and Bullock were on notice of the potential conversion. Nevertheless, through a memorandum opinion and order on January 11, 2016 (the "Order"), the court provided written notice of the potential conversion. (Doc. 15.) The Order directed Bullock to submit, by March 18, 2016: (i) "all evidence supporting his argument that the Government misled or otherwise confused him about the need to file a claim, including any evidence he wishes to submit regarding the contents of the mailing received by [Thompson] on September 27, 2013[;]" (ii) "all evidence supporting any other deficiencies that he alleges regarding the administrative forfeiture notices and/or administrative forfeiture proceedings[;]" (iii) "any evidence he wishes to submit supporting his assertion that the Government and/or A.T.F. took possession of the Other Property[;]" and (iv) "a Rule 56(d) affidavit" if he "believes he requires discovery to properly oppose summary judgment." (Id. at 8.)

In response to this Order, Bullock submitted a memorandum, additional exhibits, and a personal affidavit "outlining the exact

9

circumstances of the instant case." (Doc. 16 at 5; see also Docs. 16-1 through 16-8.) Rather than indicating a need for additional discovery prior to summary judgment, Bullock requested that the court "award summary judgment to [Plaintiff] Reginald Earl Bullock." (Doc. 16 at 7.) In these circumstances, the court concludes that conversion of the Government's motion into one for summary judgment is appropriate. See Laughlin, 149 F.3d at 260-61.

A court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). The party seeking summary judgment has the initial burden of showing the absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant satisfies this burden, the opposing party must come forward with evidence to demonstrate that a triable issue of fact exists; mere denials or allegations in its pleadings are insufficient. Anderson, 477 U.S. at 248-49. The nonmoving

10

party must establish more than "[t]the mere existence of a scintilla of evidence in support of [his] position." <u>Id.</u> at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249–50 (citations omitted). In sum, therefore, summary judgment is appropriate where a nonmoving plaintiff fails to offer "evidence on which the jury could reasonably find for the plaintiff." <u>Id.</u> at 252.

### B. The Currency

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "Rule 41 may be utilized 'to commence a civil equitable proceeding to recover seized property that the government has retained after the end of a criminal case.'" <u>United States v. Soza</u>, 599 F. App'x 69, 70 (4th Cir. 2015) (quoting <u>Young v. United States</u>, 489 F.3d 313, 315 (7th Cir. 2007)); <u>see also</u> <u>United States v. Garcia</u>, 65 F.3d 17, 20 (4th Cir. 1995). "A Rule 41(g) motion 'is properly denied if the [movant] is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture[,] or the government's need for the property as evidence continues.'" <u>Soza</u>, 599 F. App'x at 70 (quoting <u>Jackson v. United States</u>, 526 F.3d 394, 397 (8th Cir. 2008)). Thus, a party who "lacks lawful entitlement" to forfeited property "cannot avail himself of Rule

41(g) relief" regarding properly forfeited property. United States v. Martinez-Mata, No. 3:14cv10, 2014 WL 5430992, at *2 (E.D. Va. Oct. 24, 2014), appeal dismissed (July 20, 2015), aff'd, 626 F. App'x 437 (4th Cir. 2015).

Bullock acknowledges that the Currency was forfeited, but he contests the propriety of that forfeiture. (See, e.g., Doc. 2 at 2-4; Doc. 11 at 4-8.)[14] This court lacks jurisdiction to consider

---

[14] Money and property involved in violations of the Controlled Substances Act are subject to forfeiture to the United States. 21 U.S.C. § 881; see also 19 U.S.C. §§ 1602-1618. For assets valued at $500,000 or less, the United States may pursue forfeiture through either an administrative or a judicial forfeiture proceeding. See United States v. Minor, 228 F.3d 352, 354 (4th Cir. 2000); Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). If the United States elects to pursue an administrative forfeiture, it must send "personal written notice" of the administrative forfeiture proceeding, 28 C.F.R. § 8.9(b), to any individual "who appears to have an interest in the seized article," 19 U.S.C. § 1607(a); see United States v. Wilson, 699 F.3d 789, 794 (4th Cir. 2012).

"Any person claiming property seized in a[n administrative] forfeiture proceeding . . . may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A). The "claim need not be made in any particular form," 18 U.S.C. § 983(a)(2)(D), as long as it is made under oath and identifies the property being claimed and the claimant's interest in the property, 18 U.S.C. § 983(a)(2)(C). After a claim is filed, the United States must either institute judicial forfeiture proceedings or return the property to the claimant pending such judicial proceedings. See 18 U.S.C. § 983(a)(3)(A). In the judicial forfeiture proceeding, the United States will have to prove, "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). By contrast, the United States can summarily declare the item forfeited in the administrative forfeiture proceeding if no claim is filed. See 19 U.S.C. § 1609.

An individual with an interest in seized property may also seek mitigation or remission of the forfeiture. See 19 U.S.C. § 1618. A petition for mitigation or remission "does not serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence." Ibarra, 120 F.3d at 475 (internal quotation marks omitted). In other words, "under

the merits of the DEA's decision to deny Bullock's request for remission or mitigation of that forfeiture. See United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996). As a result, many of Bullock's challenges regarding the denial of his Petition (see, e.g., Doc. 11 at 8-9) are unavailing.

Bullock does raise one issue that is proper for the court's review, however. Specifically, Bullock contends that the Government provided inadequate notice of the forfeiture, misleading him regarding the need to file a claim in order to contest the forfeiture. (See, e.g., id. at 5-6.) This contention presents an issue of due process that the court can review. See Rodriguez v. Drug Enf't Admin., 219 F. App'x 22, 23 (1st Cir. 2007); Ibarra v. United States, 120 F.3d 472, 474 n.4 (4th Cir. 1997). In response, the Government disputes both the court's ability to review that assertion and the assertion's veracity. (See Doc. 13 at 3-4; see also Doc. 8 at 6.) In particular, the Government maintains that 18 U.S.C. § 983(e) constitutes "the exclusive remedy for challenging a closed administrative forfeiture." (Doc. 8 at 6.) The Government also contends that section 983(e) "does not provide for review on th[e] basis" of Bullock's asserted due process claim. (Doc. 13 at 3-4.)

---

remission/mitigation procedures, forfeitability is presumed and the petitioner seeks relief from forfeiture on fairness grounds." Id. (internal quotation marks omitted).

Section 983(e) provides a statutory basis for moving to set aside completed administrative forfeiture proceedings. See Mohammad v. United States, 169 F. App'x 475, 481 (7th Cir. 2006) ("18 U.S.C. § 983(e)[] made explicit that an aggrieved party could move to set aside even a completed forfeiture if notice of the administrative forfeiture proceedings were not received."). It does not, however, provide the exclusive basis for challenging completed administrative forfeiture proceedings. See, e.g., O'Neal v. United States, No. CR 10-182, 2015 WL 6783156, at *3 (D. Md. Nov. 6, 2015) (rejecting the government's exclusivity argument and concluding that the court had jurisdiction over the plaintiffs' challenges to an administrative forfeiture proceeding) (citing United States v. Minor, 228 F.3d 352 (4th Cir. 2000)). Rather, notwithstanding 18 U.S.C. § 983(e)(5), courts have repeatedly recognized that parties may file equitable challenges to administrative forfeitures because these proceedings "'plac[e] due process rights at particular risk.'" United States v. Rudisill, No. 1:10cr14, 2012 WL 2562424, at *2 (W.D.N.C. June 29, 2012) (alteration in original) (quoting Minor, 228 F.3d at 359); see also United States v. Claridy, 373 F. App'x 417, 418 (4th Cir. 2010) (remanding for a determination of whether a party received adequate notice of administrative forfeiture proceedings); Frazier v. United States, No. CV 214-014, 2015 WL 1505969, at *4 (S.D. Ga. Mar. 31, 2015) ("[F]ederal courts may review an administrative

14

forfeiture to determine whether the agency followed the proper procedural safeguards in forfeiting the assets." (internal quotation marks omitted)). In addition, although disclaiming the notion of "equitable jurisdiction," other federal courts have relied on "the general federal-question statute" for "jurisdiction to review a claim that notice of an administrative seizure and proposed forfeiture was constitutionally deficient." Mohammad, 169 F. App'x at 481; see, e.g., Beck v. United States, Civil Action No. 10-2765, 2011 WL 862952, at *3 (D. Md. Mar. 10, 2011) ("In addition to jurisdiction under the APA, this [c]ourt also has jurisdiction to consider [the p]laintiffs' 'constitutionally-derived equitable challenge to the administrative forfeiture . . . under the provisions for general federal question jurisdiction.'" (ellipsis in original) (quoting Minor, 228 F.3d at 357)).

In sum, the court has jurisdiction to review at least some due process challenges to completed administrative forfeiture proceedings. See Rodriguez, 219 F. App'x at 23 (concluding that court had jurisdiction over party's due process challenge to administrative forfeiture proceeding, vacating order dismissing suit "for lack of subject matter jurisdiction," and "remand[ing] with instructions that the district court consider the merits of the [plaintiff's] due process claims" (emphasis omitted)); see also Minor, 228 F.3d at 355-57; Mohammad, 169 F. App'x at 481-83 (analyzing contention that the government provided inadequate

15

notice and misled the plaintiff regarding need to file claim to contest forfeiture, and reversing dismissal of plaintiff's suit to recover seized property); Ibarra, 120 F.3d at 474 n.4 (collecting cases).

"'The fundamental requisite of due process of law is the opportunity to be heard.'  This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citation omitted).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id.  Thus, the notice must convey all required information and provide sufficient time for interested persons to respond. Id.  Although due process does not demand heroic efforts by the Government or actual notice, Dusenbery v. United States, 534 U.S. 161, 170-71 (2002), it does require more than "mere gesture[s]," Mullane, 339 U.S. at 315.

Here, Bullock contends that the Notice Form provided by the DEA misled him regarding his need to file a claim to contest the forfeiture of the Currency. (Doc. 11 at 5-6.)  Bullock primarily asserts that the language of the Notice Form and the inclusion of the Petition Form, but not a claim form, misled him regarding his need "to file a 'claim of ownership' with the D.E.A. by October

16

15, 2013." (Id. at 6; see also id. at 5.)[15]

The parties appear to share a common misconception about the contents of the Notice Form. In its initial brief, the Government incorrectly quoted the Notice Form as saying, "In addition to, or in lieu of filing a claim, you may request a pardon of the forfeited property by submitting a Petition for Remission or Mitigation of the Forfeiture to the D.E.A. . . . The petition should be filed by October 27, 2013." (Doc. 8 at 4.) Bullock adopted this incorrect language in his own brief. (Doc. 11 at 5.) He argues that this language, combined with the inclusion of a Petition Form with the Notice Form, misled him "to believe that the [Petition Form] would be sufficient to recoup the seized property." (Doc. 14 at 3; see Doc. 11 at 5-6.)

Bullock's position might have merit if there were evidence to support his contention that the Notice Form actually contained this language. Notably, however, Bullock provides no evidence to establish that he received a Notice Form with this language. In its Order, the court cautioned that unsworn assertions in pleadings and memoranda do not constitute admissible evidence for summary judgment purposes. (See Doc. 15 at 5-7.) The court further

---

[15] The Government denies sending any forms with the Notice Form (Doc. 13-1 at 4), and Bullock's avowals regarding the contents of the Notice Form mailing are somewhat ambiguous (see Doc. 16-6 at 2-3). Nevertheless, for purposes of the Government's summary judgment motion, the court accepts Bullock's contention that the Petition Form he submitted to the DEA was mailed to him alongside the Notice Form.

17

directed Bullock to "submit all evidence supporting his argument that the Government misled or otherwise confused him about the need to file a claim." (Id. at 8.) Notwithstanding these admonitions, Bullock confines his allegations regarding the Notice Form's contents and his ostensible confusion to unsworn statements in his briefs. (Compare Doc. 11 at 5-6; Doc. 14 at 3; and Doc. 16 at 5-6, with Doc. 16-6.)

In any event, and contrary to Bullock's contentions, the evidence establishes that the Notice Form did not contain Bullock's asserted language; it did not state that Bullock could file a Petition Form in lieu of filing a claim, nor does it mention a deadline of October 27, 2013. (Doc. 8-1 at 20.) Instead, the Notice Form clearly provides:

> In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the D.E.A. by **October 15, 2013**. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)).

(Id. (emphasis in original).) Stated more succinctly, it provides that in lieu of filing a petition, an individual can file a claim, which does not require "any particular form." (Id.) This creates the inverse paradigm from that described by Bullock, one where the claim, not the Petition Form, constitutes the more encompassing option. (Compare id. with Doc. 11 at 5.) And as for the filing deadline, the Notice Form clearly provides that any claim must be

18

filed by October 15, 2013. (Doc. 8-1 at 20.) The date October 27, 2013, is not mentioned in the Notice Form (see id.) or, as far as the court is aware, anywhere else in the evidence.[16]

In light of the actual language of the Notice Form, Bullock fails to establish that the Government's communications – even assuming inclusion of the Petition Form – misled him into foregoing his opportunity to file a claim to contest the forfeiture. See Mohammad, 169 F. App'x at 481-82 (analyzing and rejecting contention that forfeiture notices were unclear and confusing). And given the absence of evidence supporting Bullock's contention that the administrative forfeiture notices were constitutionally deficient, Bullock cannot establish his right to lawful possession of the Currency. See Martinez-Mata, 2014 WL 5430992, at *2; cf. O'Neal, 2015 WL 6783156, at *3. The court will therefore grant summary judgment to the Government on Bullock's request to return

---

[16] Although Bullock has not raised this argument, the court also notes that the Notice Form provides sufficient information about the method and deadlines for "filing" a claim. It states, "A PETITION, CLAIM, OR OTHER CORRESPONDENCE SHALL BE DEEMED FILED . . . WHEN RECEIVED BY THE DEA" at one of two specified addresses. (Doc. 8-1 at 20.) At least one court has held that the prisoner "mailbox rule," which deems legal papers to be "filed" on the date they are given to prison officials rather than the date they are received, applies to civil forfeiture proceedings. See Longenette v. Krusing, 322 F.3d 758, 764-65 (3d Cir. 2003). This rule does not apply in this case, however, because Bullock was not taken into custody until November 14, 2013, well after he made his submission in this case. (See Doc. 5 in case No. 1:13cr408 (ordering detention pending hearing); Doc. 6 in case No. 1:13cr408 (executed arrest warrant)); see also In re Seizure of 2007 GMA Sierra SLE Truck, VIN: 2GTEK13C1715, 32 F. Supp. 3d 710, 717 n.10 (D.S.C. 2014) (stating that the mailbox rule does not apply to non-prisoners in asset forfeiture proceedings under section 983 and collecting cases).

the Currency. See Anderson, 477 U.S. at 252; Soza, 599 F. App'x at 70.

## C. The Other Property

The Government contends that Bullock's request for the return of the Other Property should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. 8 at 1, 9-10.) Specifically, the Government contends that it never possessed the disputed property, thus depriving the court of jurisdiction over Bullock's request for its return. (Id. at 9-10; Doc. 13 at 4-6.) As proof of its non-possession, the Government proffers the affidavit of a DEA Records Examiner Analyst. (Doc. 13-1 at 1-2.) In this affidavit, the DEA analyst avers that she has reviewed the relevant DEA forfeiture records and case files "and finds no evidence that the agency seized any items of personal property, with the exception of the $6,470.00 in U.S. Currency, from Reginald Earl Bullock." (Id. at 1.)

The Government thus lodges a factual challenge to the court's jurisdiction. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations[,]" but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Holt v. United

20

<u>States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995).  In resolving this type of Rule 12(b)(1) challenge, the "court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." <u>Kerns</u>, 585 F.3d at 192.

"[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." <u>Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.</u>, 147 F.3d 347, 352 (4th Cir. 1998) (internal quotation marks omitted).  As such, no presumption of jurisdiction applies, <u>Pinkley, Inc. v. City of Frederick, Md.</u>, 191 F.3d 394, 399 (4th Cir. 1999), and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," <u>Davis v. Pak</u>, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted).  For the court to have jurisdiction here, the Government must "actually or constructively possess" the property Bullock seeks through his Rule 41(g) petition.  <u>Hill v. United States</u>, No. 1:12cv92, 2013 WL 1192312, at *4 (N.D. W. Va. Mar. 22, 2013).

The Government constructively possesses property "(1) where the government uses the property as evidence in the federal prosecution, or (2) where the federal government directed state officials to seize the property." <u>Robinson v. United States</u>, No. 3:11CV369, 2013 WL 682894, at *2 (E.D. Va. Feb. 22, 2013).  But

the "'assertion that federal authorities controlled the ongoing investigation and were involved in the seizures, without more, is insufficient to establish the extensive federal possession or control necessary to make Rule 41[(g)] the appropriate vehicle by which to recover the state-forfeited property.'" Hill, 2013 WL 1192312, at *4 (quoting Bennett v. United States, No. 3:11-CV-103, 2012 WL 1752409, at *3 (N.D. W. Va. May 16, 2012)).

Here, it is uncontested that HPPD officers seized the disputed property during their traffic stop of Bullock. (See, e.g., Doc. 2 at 3; Doc. 16-6 at 2; Doc. 8-1 at 2.) Nothing in the record suggests that the Government was in any way involved in this traffic stop, and, indeed, Bullock concedes the Government's noninvolvement. (See Doc. 11 at 4 (acknowledging that neither the DEA nor another federal agency "direct[ed] the High Point Police Department to seize [Bullock's] property").) In his unsworn Rule 41(g) petition, however, Bullock suggests that ATF officers assumed possession of his property from the HPPD. (Doc. 2 at 3.) In his affidavit, Bullock similarly asserts that HPPD officials told him that the ATF assumed possession of this property. (Doc. 16-6 at 2.)[17] Nevertheless, Bullock also claims that the DEA in fact had possession of his property. (Id.) Bullock accordingly

---

[17] This statement rests upon nonadmissible hearsay. North Am. Clearing, Inc. v. Brokerage Computer Sys., Inc., 666 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009); see also Fed. R. Evid. 801(c).

seeks return of this property from the DEA, not the ATF, effectively conceding the ATF's non-possession of this property. (See Doc. 16 at 6-7; see also Doc. 11 at 9-10 (requesting an order directing the DEA and U.S. Attorney's Office to return property); Doc. 14 at 8 (requesting an order "directing the Government, specifically the D.E.A.[,] to return [Bullock's] monies and property").)

In his memoranda opposing the Government's motion, Bullock advances two theories regarding the DEA's alleged possession of the Other Property. First, Bullock maintains that the DEA assumed control of this property by virtue of his indictment and prosecution in federal court. (See Doc. 11 at 4; Doc. 14 at 5-6.) He provides no authority for this proposition. (See id.) In any event, it fails. See United States v. Copeman, 458 F.3d 1070, 1072 (10th Cir. 2006) (rejecting the premise that "federal prosecution alone confers on the federal government constructive possession of each item of property seized by a state during an investigation"); see also Bratton v. United States, No. 1:09CV603, 2010 WL 3279302, at *1 (M.D.N.C. Aug. 19, 2010) (explaining that prosecution in federal court "alone is not enough to allow a motion for return of property to be brought" in federal court) recommendation adopted, No. 1:09CV603, 2010 WL 3783945 (M.D.N.C. Sept. 28, 2010).

Second, Bullock asserts that, in adopting the Currency for

forfeiture, the DEA assumed control over all of Bullock's property. (See Doc. 14 at 6.) Again, no authority is provided for this assertion. (See id.) To the contrary, Bullock submits correspondence between the HPPD and a federal AUSA indicating that the HPPD retained control over, and destroyed, at least some of the Other Property. (See Doc. 11-2 at 5; Doc. 11-3 at 2, 4.) Indeed, Bullock now appears to accept that the HPPD retained possession of at least some of his property. (See Doc. 16 at 4 (asserting that Bullock "is entitled to his property illegally seized in the possession of the D.E.A. and High Point Police Department"), 6-7 (requesting an order directing DEA to "return all monies and property . . . presently in the possession of said D.E.A." and "an [o]rder directing the High Point Police Department . . . to immediately return the unlawfully and illegally seized described monies and personal property resulting from [Bullock's] arrest on **August 18, 2013**" (emphasis in original).) [18]

The court finds that Bullock has not established that the Government actively or constructively possessed the Other Property. First, Bullock offers no competent evidence that the DEA actually possessed the Other Property. The most he offers is the statement in his affidavit that, "Once contact was made with

---

[18] As the HPPD is not a party to this suit, the court cannot grant the requested relief against this State agency.

24

the D.E.A.[,] I was informed that the D.E.A. was in fact in possession of my property, and was instructed to submit the proper paperwork to determine if my property would be returned." (Doc. 16-6 at 2.) The statement provides no details regarding the contents of the "property" in the DEA's possession. (See id.) The DEA has provided sworn evidence that the only such property was the Currency (see Doc. 13-1 at 1-2), a position supported in part by Bullock's own (unauthenticated) exhibits (see Doc. 16-4 at 3-4; see also Doc. 11-2 at 5; Doc. 11-3 at 2, 4.). In these circumstances, the court finds that Bullock has not met his burden of showing that the DEA actually possessed the Other Property.

Similarly, Bullock fails to establish that the DEA constructively possessed the Other Property. Bullock pleaded guilty in his federal criminal case, thereby forfeiting his right to trial. (See Minute Entry Dated Jan. 9, 2014 in case No. 1:13cr408.) This obviated the need for the Government to produce any of the Other Property at trial, forestalling a constructive possession claim on this basis. Hill, 2013 WL 1192312, at *4; Bennett, 2012 WL 1752409, at *3.[19] The Government's undisputed noninvolvement in the HPPD's seizure of the Other Property likewise

---

[19] Moreover, as Bullock was prosecuted on federal firearm charges, the Government had no need to utilize the Other Property (which does not include a firearm) in its prosecution. See Bratton, 2010 WL 3279302, at *1 n.1.

forestalls a constructive possession claim. See Hill, 2013 WL 1192312, at *4. Accordingly, the court lacks jurisdiction over Bullock's request for return of the Other Property. See Robinson, 2013 WL 682894, at *3. In sum, if Bullock has any recourse at all regarding the Other Property, it is in the State courts or through State administrative proceedings, not in this court. See Bratton, 2010 WL 3279302, at *1.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the Government's motion to dismiss or, alternatively, for summary judgment (Doc. 7) is GRANTED. Bullock's claim for return of the Currency is DISMISSED WITH PREJUDICE. In addition, Bullock's claim for the return of the Other Property is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.


                                    /s/    Thomas D. Schroeder
                                 United States District Judge

March 31, 2016